**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

UNITED STATES OF AMERICA

V.                                                                                      CASE NO. 5:24-MJ-5050-MAS

HUSSEIN A. QASIM

*****

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Roger J. Kimmel, being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the United States Secret Service ("USSS"), and have been since September 2002. I graduated from the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia and the USSS Special Agent Academy in Beltsville, Maryland. Prior to joining the USSS, I was an Intelligence Officer in the United States Marine Corps for four years. I have a Bachelor's Degree in Political Science with a minor/emphasis in Criminology. I am a law enforcement officer as that term is used in Federal Rule of Criminal Procedure 41 and am currently assigned to the Lexington, Kentucky Resident Office. My duties include investigating violations of federal laws constituting financial crimes.

2. This affidavit is being submitted in support of a criminal complaint. For the reasons set forth below, I respectfully submit that this affidavit contains probable cause to believe that **HUSSEIN QASIM** has committed violations of 18 U.S.C. §§ 1956 (Money Laundering

Conspiracy) and 1957 (Transactional Money Laundering). I make this affidavit based upon personal knowledge derived from my participation in this investigation and upon information communicated or reported to me during the investigation by other participants in the investigation. This affidavit is intended to show only that there is probable cause to support the complaint for the requested arrest warrant. This affidavit does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

3. The investigation in this case has identified a network that engages in a complex scheme centered on the fictitious sale of expensive, luxury vehicles that are neither owned nor in the possession of the individual(s) attempting to sell them. Here, on numerous occasions, the perpetrators reached out over the phone or internet to luxury car dealerships throughout the United States using various aliases and requested to speak with a sales associate or manager. The perpetrators presented themselves as employees of another legitimate luxury car dealership and offered luxury vehicles for sale. The perpetrator provided pictures of and titles for the vehicles in question, as well as the dealership license of their represented "employer." If an agreement was reached to purchase the vehicles, the perpetrator then provided bank account information to receive the victim funds, including for bank accounts located in the Eastern District of Kentucky. In a number of verified instances, the perpetrators successfully convinced a dealer to wire funds to a bank account for a vehicle that was never provided. In some cases, the victim dealerships were able to uncover the fraudulent scheme in time to freeze the provided funds and prevent any subsequent movement or loss. However, in other instances, the illicit funds were quickly removed from the recipient account and never recovered.

4. As part of the scheme, the perpetrators also purported to attempt to purchase luxury

cars advertised by the victim dealership. During this discourse, the victim dealership would often provide pictures and documentation (i.e., title and dealership license) for the vehicles in question. The perpetrators then had pictures and documents to use to commit fraud against new victims in the future.

5. The investigative team identified a recent victim dealership located in Anaheim, California (herein after "JSM"). On December 10, 2023, a salesman using the name "Michael Armstrong", who claimed to work for a dealership based in Boston, MA (herein after "GFD"), had contacted JSM interested in a vehicle trade. Initial contact took place with the General Manager of JSM, who subsequently directed Armstrong to engage with the dealership's appropriate sales staff. Specifically, Armstrong was seeking to trade a 2021 Ford GT for a 2015 Ferrari currently owned by JSM. On or about December 20, 2023, an agreement was ultimately reached whereby JSM and GFD would trade the aforementioned vehicles. As part of that sale, JSM would ultimately pay Armstrong $500,000.00. To receive payment, Armstrong provided wiring instructions indicating the $500,000.00 payment should be sent to Truist Bank account *3116. On or about December 21, 2023, JSM sent the $500,000.00 wire.

6. According to the owner of JSM, the dealership was subsequently alerted by a vehicle transporter, who had just attempted contact with the real GFD to arrange the pickup of the Ford GT, that the real GFD was not aware of the trade in question. Moreover, GFD representatives purported this was not the first instance someone had represented himself as an employee of their business and had tricked another dealership into the purchase of the same vehicle.

7. Records from Truist Bank showed the *3116 account was registered to the business Qasim, LLC dba Lux Auto Imports and listed Hussein QASIM as the only individual with signatory authority. The account was opened and maintained in the Eastern District of Kentucky.

Accordingly, the wire transfer from JSM constituted an interstate wire. Additional research further confirmed Qasim, LLC dba Lux Auto Imports was a registered business within the Commonwealth of Kentucky. State records also identified QASIM as the registered agent for the Qasim, LLC business, which was formed on September 09, 2015. On October 4, 2023, the company was administratively dissolved, but on December 6, 2023, just days before JSM wired the funds to QASIM's bank account, the Kentucky Secretary of State received an application for reinstatement. Additionally, Secretary of State records indicated an assumed name, "Lux Auto Import", was added on December 13, 2023. Prior assumed names included "Falafel House" and "Alhamra".

8. Records further indicated the Truist Bank account *3116 was opened on December 21, 2023, and done so at the Truist Bank "Beaumont Branch" located at 937 Midnight Pass in Lexington. When interviewed, the manager of the Beaumont Branch stated that when opening the account, QASIM described his business model as a private seller of high-end luxury automobiles that were purchased at auction. QASIM purported to the bank manager that he operated the business out of his residence in Lexington and that he would regularly receive wires during the course of his business' operation.

9. Review of the Truist Bank account *3116 demonstrated it was opened with a small cash deposit and immediately received the $500,000 wire from JSM the following day on December 22, 2023. On the day the wire was received, the branch manager confirmed QASIM visited the branch stating he was expecting to receive the transfer. Due to the suspicious circumstances of this wire, bank personnel informed QASIM the transfer had yet to be collected from the originating bank and thus could not be released. Several hours later, the branch manager stated he was informed by the originating bank the transfer had been deemed fraudulent and the funds were frozen. Prior to the account's hold, records indicate $5,000 was transferred from the

*3116 account to "Hussein Qasim" via a Zelle payment.

10. The branch manager explained that on December 23, 2023, QASIM was waiting outside the Beaumont branch prior to its opening. Upon employees' arrival, QASIM once more requested access to the wired funds stating he needed to initiate a transfer. The manager informed QASIM the wire had been reported as fraudulent to which QASIM became visibly nervous, replied "Ok", and then left.

11. In addition to the events described above, the investigation has identified a number of similar incidents dating back to August 2022, whereby the same exact scheme has been attempted on luxury auto dealerships. At least one additional victim has been identified who confirmed falling victim to the same fraudulent scheme and wired a payment for a vehicle that were never provided to an account registered to QASIM, under a business account name where QASIM held signatory authority. In this instance, financial analysis of these records demonstrated the fraudulent proceeds were swiftly transferred to other accounts and dispersed by varying methods.

12. A summary of this incident is as follows:

   a. In June 2022, victim "DR", a car dealership business operating out of Florida, was contacted by an individual utilizing the alias, "Frank Mecum". "Mecum" represented himself as a dealership employee based in Wisconsin and offered the sale of a 2021 Ferrari SF90. The discussions between "Mecum" and DR salesman took place both telephonically and via email. An agreement was reached for DR to purchase the vehicle. DR was provided wiring instructions to a JP Morgan Chase Bank Account #: *2328. Payment was provided in the form of a $740,000 wire on or around June 28, 2022. Through valid legal process, JP Morgan Chase provided

account records for the *2328 bank account which was in the name of QASIM LLC. Additional account records identified the sole owner of the company as Hussein QASIM. An analysis of the account confirmed its receipt of the wire transfer sent from DR. On the same days the wire was received, the monies were transferred in their entirety to JP Morgan Chase account *3993. Through valid legal process, JP Morgan Chase also provided records from the *3993 account, which was also in the name of Hussein QASIM. Analysis of these records revealed that once QASIM received the transfers of the illicit funds to the *3993 account, QASIM quickly sought to convert the funds into three cashier's checks, two were for $300,000 respectively and written out to himself while the other was for $100,000 and written to a Nedal NASSER. JP Morgan Chase records indicated the checks written to QASIM were subsequently deposited in an account registered to QASIM and maintained at the University of Kentucky Federal Credit Union, which operates within the Eastern District of Kentucky.

13. Additional analysis of the collective events described herein indicate QASIM is regularly worked and coordinated with other individuals in furtherance of the fraudulent scheme. As described, contact with the victim dealerships took place over multiple electronic mediums including email. The investigative team identified multiple email addresses utilized by the individual(s) posing as interested sales associates, all of which were Google accounts. Through valid legal process, Google provided records for several accounts including all historical IP activity. A review of those records demonstrated an overwhelming utilization of IP addresses that resolved to the Amman, Jordan region. Additional analysis of personal bank accounts registered to QASIM demonstrated his travel and presence in that region in February 2023.

6

14. Other victims of this scam, luxury car dealerships who were contacted by perpetrators impersonating the same dealerships or employees, wired funds to accounts in other business names, where QASIM's brother, Ibrahim Qasim, was the sole signatory authority. In some cases, I. Qasim then quickly disbursed the illicit funds to other individuals or businesses, including QASIM. This pattern of behavior substantiates QASIM's utilization of others in the obfuscation and movement of the illicit proceeds.

15. On November 30, 2023, this Court issued a complaint-based arrest warrant against Ibrahim Qasim, which has remained under seal since that time. (5:23-MJ-5387). On February 5, 2024, Qasim was arrested on a failure to appear warrant for a traffic violation out of Shelby County. He remains incarcerated on that offense, but the complaint-based federal arrest warrant has been lodged against I. Qasim. Officers with Louisville Metro Police Department informed I. Qasim that he had a federal arrest warrant lodged against him. These same officers explained to the United States Secret Service that I. Qasim has possessed his cell phone during numerous time periods since his arrest. On February 6, 2024, I received information that QASIM purchased a plane ticket to fly out of the country departing the same evening at 09:05 pm EST.

## CONCLUSION

16. I believe that the facts set forth above support that there is probable cause to believe that between June 2022 and December of 2023, in the Eastern District of Kentucky and elsewhere, Hussein A. QASIM has committed violations of 18 U.S.C. § 18 U.S.C. § 1956 (conspiracy to commit money laundering), and 18 U.S.C. § 1957 (transactional money laundering).

WHEREFORE, your Affiant respectfully requests that the Court issue a warrant for the arrest of HUSSEIN A. QASIM.

Respectfully submitted,

/s/ Roger J. Kimmel
Roger J. Kimmel
Special Agent
United States Secret Service

Attested by affiant by reliable electronic means per FRCrP 4.1 on this 6th day of February, 2024.

_____
HONORABLE MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE